IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 Case |
| | ) | |
| RACHEL C. GLOVER, | ) | Case No. 23-15178 |
| | ) | |
| Debtor. | ) | Hon. Donald R Cassling |
| | ) | |
| | ) | |
| HONEYBADGERS HOLDINGS LLC, | ) | Adversary No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL C. GLOVER, | ) | |
| | ) | |
| Defendant. | ) | |

### HONEYBADGERS HOLDINGS LLC'S ADVERSARY COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE THE DISCHARGABILITY OF DEBTS

Now comes Creditor, Honeybadgers Holdings LLC ("Creditor"), by and through its counsel, Manetti Aguilera Seiler LLC, pursuant to 11 U.S.C. §§ 523 and 727, for their complaint objecting to discharge and to determine the dischargeability of debts owed by Rachel C. Glover ("Debtor") to Creditor.

### INTRODUCTION

1. This is an adversary proceeding in which Creditor is objecting to the discharge of the Debtor's debts pursuant to 11 U.S.C. §523(a)(2)(A), §523(a)(4) and §523(a)(6) and 11 U.S.C §727(a)(3), §727(a)(4)(3), §727(a)(5) and §727(a)(7).

2. Creditor is a real estate investor that specializes in purchasing rehabilitating, and selling of distressed properties.

3. This adversary action relates to the failures of Debtor's general contracting company to rehabilitate certain properties for Creditor and Debtor's fraudulent scheme to divert funds away from the rehab projects for the benefit of herself.

4. Debtor is also a license real estate broker with Coldwell Banker.

5. Creditor entered into contracts with Debtor's company, Glover Industries LLC ("Glover"), for construction and rehabilitation services of at least two properties purchased and owned by Creditor located at 1526 South Harding Avenue, Chicago, Illinois 60623 ("Harding Property") and 1826 South Springfield Avenue, Chicago, Illinois ("Springfield Property").

6. The manager and registered agent for Glover is Debtor. Debtor allowed Glover Industries LLC to involuntarily dissolve to avoid Creditor.

7. Pursuant to the Contract for the Harding Property, Creditor gave and entrusted Glover and Debtor with $250,000 toward the construction and rehabilitation of the Harding Property.

8. Pursuant to the Contract for the Springfield Property, Creditor gave and entrusted Glover and Debtor with $167,437.90 toward the construction and rehabilitation of the Springfield Property.

9. Debtor, however, improperly retained the funds and instead used them for her own personal benefit.

10. The Debtor's tortious and fraudulent conduct was the subject of prior pending state court actions against Glover and Debtor for breach of contract, quantum merit, fraud, fraudulent misrepresentation, negligent misrepresentation and violations of the Real Estate License Act (225 ILCS 454/15-25 (collectively, the "State Court Action").

11. Before a final determination could be reached in the State Court Action, Debtor filed her bankruptcy petition.

12. Creditor now seeks to determine the dischargeability of the amounts owed by Debtor to Creditor relating to her tortious and fraudulent conduct.

## PARTIES, JURISDICTION AND VENUE

13. Creditor is a Nevada limited liability company registered to conduct business in the state of Illinois and operating in the state of Illinois.

14. Debtor, Rachel C. Glover, is an individual residing in Chicago, Illinois.

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

16. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

17. Venue is proper in this District pursuant to 28 U.S.C. §1409.

## PROCEDURAL POSTURE OF BANKRUPTCY MATTER

18. On November 10, 2023, Debtor filed a voluntary petition for relief under Chapter 7 of Bankruptcy Code.

19. On November 10, 2023, the Debtor filed her bankruptcy schedules and Statement of Financial Affairs [Dkt. No. 1].

20. The Debtor, however, misstated "Debtor's claim" against Creditor, and did not include that Creditor had claims against Debtor and Debtor's involuntarily dissolved company Glover.

21. "Debtor's claim" was litigated in the name of Glover and was resolved with judgment entered in favor of Creditor.

3

22. The original meeting of creditors proceeded on December 7, 2023 and then continued by the Trustee to December 21, 2023 for Creditor to question Debtor.

23. On February 20, 2024, Creditor's Motion for Authority to Conduct Rule 2004 Examinations and Motion for Entry of Order Allowing Extension of Time to Object To Debtor's Discharge and Dischargeability was granted. [Dkt. No. 23]

24. Also, on February 20, 2024, Creditor's first Motion Extending Time to File Objection to Discharge and Dischargeability was granted to allow Creditor time to conduct Rule 2004 examinations. [Dkt. No. 24].

25. On April 18, 2024, Creditor issued its Rule 2004 Subpoena upon Debtor. See **Exhibit A**.

26. The Subpoena set Debtor's Rule 2004 document production deadline for May 1, 2024 and Debtor's Rule 2004 examination was scheduled for May 7, 2024.

27. On April 23, 2024, Creditor's Second Motion Extending Time to File Objection to Discharge and Dischargeability was granted to allow the parties time to complete discovery and exam the Debtor under Rule 2004. [Dkt. No. 26]

28. Debtor failed to answer the Rule 2004 document production and failed to appear for her Rule 2004 examination.

29. After Debtor's failure to produce documents as requested, Creditor filed a Third Motion Extending Time To File Objection to Discharge and Dischargeability [Dkt. No. 27] and a Motion for Sanctions and Rule to Show Cause For Failure to Respond to Rule 2004 Requests. [Dkt. No. 28]

4

30. Creditor's Third Motion Extending Time To File Objection to Discharge and Dischargeability was granted on July 3, 2024 to allow additional time for Debtor to sit for a Rule 2004 exam and to produce documents under the same. [Dkt. No. 33]

31. Also on July 3, 2024, Debtor and Debtor's counsel agreed to provide responsive documents and for Debtor to sit for the examination on July 18, 2024, via Zoom, subject to certain conditions.

32. On July 17, 2024, Debtor's counsel informed Creditor that Debtor provided all documents in her possession and she has no access to additional documents. However, after Creditor raised the serious implication of that statement, and further discussions, Debtor's counsel committed to additional documentation, which again was not forthcoming. Creditor subsequently agreed to a last-minute cancelation for additional time to provide the responsive documents, but with the condition that the second late cancelation fee also be satisfied by Debtor or Debtor's counsel.

33. On July 22, 2024, Debtor's counsel committed to Debtor complying with the subpoena request and the examination proceeding on July 25, 2024.

34. On July 24, 2024, after Creditor again sought responsive documents and payment for cancelations of court reporter, Debtor's counsel tendered incomplete bank statements and tax documents; however, the subpoena's request was still not satisfied.

35. On July 25, 2024, Creditor examined Debtor with Debtor's counsel present. During the examination, Debtor testified to, among other statements, the following:

- the information within the petition mostly consisted of information Debtor's counsel took from Debtor's credit report and was not based off documents or information she provided;
- that she does not have business debts;
- that the liabilities as listed in her petition do not seem accurate, and that she does not know how that information was put there;

5

- that her personal property of computer and cell phone were utilized by her individually and on behalf of Glover;
- that, after stating there are no other accounts in her name or on behalf of an entity from prior to the bankruptcy petition, she disclosed there were several additional financial accounts with Bank of America that were not listed on the petition;
- that a Chase Bank account listed on the petition was and remains in the name of Glover;
- that Glover had no assets or liabilities when it dissolved except for the mechanics lien;
- that the Debtor considers herself one and the same as Glover;
- that Debtor shredded or otherwise disposed of her personal and Glover business books, records and papers;
- that Glover never filed tax returns;
- that the active claim she lists in her petition against Creditor is in the name of Glover;
- that Debtor has no knowledge as to most of the debts listed as nonpriority unsecured claims and relied entirely on Debtor's counsel regarding those debts, which she assumes Debtor's counsel pulled from the credit report;
- that Debtor does not know why her brother, Isaac Glover, is listed as a codebtor on her petition;
- that income listed from operating a business was income from Glover;
- that the petition does not include her owning Glover or being a member of West Pullman Properties LLC, but only that she was a sole proprietor and/or self-employed;
- that there were a number of documents not provided that would be responsive to the subpoena and that although she had documents in her possession, she only tendered those documents on July 24, 2024, despite having the subpoena for two months; and,
- that she had signed the petition and by doing so she was aware that she was attesting to the truth and accuracy of the answers and declarations in the petition.

See a true and correct copy of the Transcript of Proceedings attached hereto as **Exhibit B**.

36. On August 6, 2024, Debtor's Counsel committed to tendering the remaining documents responsive to the subpoena.

37. On August 13, 2024, Creditor's Fourth Motion Extending Time To File Objection to Discharge and Dischargeability was granted to again allow additional time for Debtor to sit for a Rule 2004 exam and to produce documents under the same. [Dkt. No. 38]

38. Also on August 13, 2024, Debtor's Counsel committed to tendering statements from Bank of America, N.A.

39. On September 9, 2024, Debtor's Counsel tendered nearly two hundred documents of financial records not previously provided and not disclosed on the petition. These documents

still do not provide a complete and accurate history of the funds from Creditor to Debtor and Glover. Moreover, these records establish that the Glover and Debtor accounts were used interchangeably for personal and business purposes.

40. On October 29, 2024, Creditor's oral motion for extending time to file objection to discharge and dischargeability was granted extending the deadline to November 4, 2024. [Dkt. No. 60].

41. Also, on October 29, 2024, Creditor's Motion for Rule to Show Cause was granted and sanctions were entered against Debtor for failing to produce documents requested under Rule 2004. [Dkt. No. 61]

42. As of the date of filing of this adversary complaint, Debtor has not been granted a discharge.

43. Creditor was given until November 4, 2024, to object to discharge and dischargeability.

44. This adversary complaint is timely as it is being filed prior to deadline granted to Creditor.

## **BACKGROUND FACTS – HARDING PROPERTY**

45. On or about November 5, 2020, Creditor and Glover Industries LLC entered into a contract in the amount of $250,000.00 for Glover Industries LLC to provide construction and rehabilitation services at the Harding Property, including, but not limited to, the following: (1) demolition; (2) the removal and replacement of the entire roof; (3) the repair or removal and replacement of brickwork and tuckpointing; (4) electrical work; (5) installation of security windows; (installation of fence; and (7) heating/HVAC replacement.

46. During this same period in time, it was agreed that Coldwell Banker, Debtor and another agent at Coldwell Banker, would also be the listing agent for the Harding Property upon completion of the construction and rehabilitation.

47. On or about November 9, 2020, Debtor, through her company, purportedly entered into a subcontract Cottage Grove Glass Company 7403, Inc. for $15,680.00 for the replacement of windows related capping.

48. On or about November 12, 2020, Debtor, through her company, purportedly entered into a subcontract Chicago Building Contractors LLC for $20,327.21 to repair and restore the roof of the Harding Property.

49. On or about November 16, 2020, Debtor, through her company, provided an expense spreadsheet and status of rehabilitation to Creditor. Creditor paid Debtor's company the amount of $29,840.00, a payment made in reliance of Debtor's spreadsheet.

50. Also, on or about November 16, 2020, Debtor, through her company, purportedly entered into a subcontract with Goosby's Electric Service for $30,000.00 worth of electrical work on the Harding Property.

51. On or about November 27, 2020, Debtor, through her company, delivered to Creditor an increased expense budget for the project. On December 18, 2020, Creditor paid Debtor's company an additional $29,000.00 towards the contract, a payment made in reliance of Debtor's spreadsheet.

52. On February 20, 2021, Creditor paid Debtor's company an additional $25,000.00 towards contract.

53. On April 13, 2021, Debtor informed Creditor it would be obtaining an electrical permit for the Harding Property.

54. On or about April 1, 2021, Creditor entered into a Broker Agreement with Coldwell Banker for the marketing of the Property at $450,000.00 in which Debtor was the designated agent.

55. On April 6, 2021, Debtor, on behalf of her company, executed a final waiver of lien for the amount of $250,000.00, reflecting the total amount paid by Creditor to Debtor towards the contract. Attached hereto and incorporated herein as **Exhibit C** is a true and correct copy of the lien waiver.

56. On April 13, 2021, Debtor, on behalf of her company and Coldwell Banker, informed Creditor it will be procuring an electrical permit, provided an update as to the rehabilitation, and indicated marketing of the Harding Property would commence the next day.

57. In June 2021, Creditor requested to cancel the Broker Agreement with Debtor, through Coldwell Banker.

58. Shortly thereafter, Debtor informed Creditor performance on the project was complete, but that Coldwell Banker was seemingly unable to sell the Property.

59. Creditor then sought out the services of a third-party property manager, Area Wide Realty, to look over the property, and was informed by Area Wide Realty that the construction was not completed.

60. On June 22, 2021, Creditor requested from Debtor the permit she had said she was procuring. Creditor received no response.

61. Also on June 22, 2021, Creditor had an inspection performed on the Harding Property to determine what, if any, construction and rehabilitation had been completed. The inspector found significant material deteriorations, multiple safety hazards including the fence and electrical, water damage and structural issues, and the entire first floor unit was inaccessible.

62. The findings indicate that what work that had been done to the Property had not been done by licensed electricians, plumbers, carpenters or contractors. Attached hereto and incorporated as **Exhibit D** is a true and correct copy of the inspection report.

63. On June 23, 2021, Creditor made a second request to Debtor and Coldwell for the permit it had paid Debtor's company for. Creditor again received no response.

64. From August 2021 through October 2021, Creditor incurred additional expenses to maintain the Property, secure it from the most hazardous findings, and perform minimal rehabilitation for purposes of selling the Property. Towards this it paid property manager Area Wide Realty $11,472.00.

65. Creditor was unable to find contractors to cure all the defective, unsafe and hazardous state of the property. And on or about September 28, 2021, Creditor sold the property at a significant loss and without the assistance of Debtor or Coldwell Banker.

66. As a result of Debtor's actions, on August 11, 2023, Creditor filed its Complaint against Debtor, Glover Industries LLC and Coldwell Banker in the Circuit Court of Cook County.

## **BACKGROUND FACTS – SPRINGFIELD PROPERTY**

67. On or about April 6, 2021, Creditor and Glover Industries LLC entered into a contract in the amount of $167,437.90 for Glover Industries LLC to provide construction and rehabilitation services at the Springfield Property, including, but not limited to, the following: (1) the removal of existing porch and building of a new exterior front porch; (2) the removal and replacement of the entire roof; (3) the repair or removal and replacement of brickwork and tuckpointing; (4) the installation of two new furnaces and two new air conditioner units; and (5) the updating and repair of all ductwork. Attached hereto and incorporated herein as **Exhibit E** is a true and correct copy of the initial invoice. Creditor paid Debtor's company $40,000.00 as an

initial installment towards that contract. Attached hereto and incorporated herein as **Exhibit F** is a true and correct copy of Creditor's account summary for the property.

68. Also, on or about April 6, 2021, it was agreed that Debtor, through Coldwell Banker, would be the listing agent for the sale of Springfield Property upon completion of construction and rehabilitation.

69. On May 8, 2021, Creditor paid Debtor's company $25,000.00 towards the contract. See Ex. F.

70. Also on May 12, 2021, Debtor, through her company, informed Creditor of purported construction and rehabilitation progress.

71. On May 20, 2021, Creditor paid Debtor's company an additional $30,000.00 towards the contract. See Ex. E.

72. On or about June 10, 2021, Creditor requested an update as to the project including a spreadsheet of completed and paid for work and what was not. Debtor did not provide the requested spreadsheet, but sent several correspondences regarding the purported additional progress. Attached hereto and incorporated herein as **Exhibit G** is a true and correct copy of that correspondence.

73. Shortly thereafter, Debtor informed Creditor that performance on the project was complete, but Coldwell Banker was seemingly unable to sell the Springfield Property.

74. Creditor then sought out the services of a third-party property manager, Area Wide Realty, to look over the property, and was informed by Area Wide Realty that the construction was not completed.

75. On or about July 2, 2021, Creditor had an inspection performed on the Springfield Property to determine what, if any construction had been completed, and what rehabilitation

needed to occur. Attached hereto and incorporated herein as Exhibit H is a true and correct of the inspection report. The inspector found the property unsafe, damaged, and that the work that had been performed was not up to Code, was not performed under permits or by licensed subcontractors.

76. Creditor was unable to find new contractors to cure the defective, unsafe and hazardous state of the property, and was required to sell the Springfield Property at a significant loss and without the assistance of Debtor or Coldwell Banker.

77. On November 3, 2021, Glover Industries LLC filed a Complaint for Mechanic's Lien against the Springfield Property in the Circuit Court of Cook County.

78. On June 8, 2023, Creditor's Motion for Judgment on Pleadings as to Glover Industries LLC's mechanics lien claim was granted.

79. On the same date, Creditor filed a Counterclaim and Third-Party Complaint against Debtor, Glover Industries LLC and Coldwell Banker as a result of the fraudulent actions taken by Debtor.

**COUNT I**
**NONDISCHARGEABILITY OF DEBT**
**UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE**

80. Creditor incorporate and re-allege by reference paragraphs 1 through 79 above as if specifically restated herein.

81. Section 523(a)(2)(A) of the Bankruptcy Code provides, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

12

82. Debtor made numerous false representations of material fact and engaged in actual fraud through her communications to Creditor, false spreadsheets, invoices and lien waiver provided to Creditor for work purportedly performed at the Harding Property and Springfield Property.

83. Debtor knew her communications, spreadsheets, invoice and lien waiver related to the rehabilitation work on the Harding Property and Springfield Property were false and yet intended to induce Creditor to rely upon the false communications, spreadsheets, invoice and lien waiver.

84. Creditor did in fact rely upon the false communications, invoice and lien wavier and as a result paid and suffered in the amount of at least $345,000 in damages.

85. Debtor is liable to Creditor for the amounts fraudulently misrepresented by Debtor relating to the work performed at the Harding Property and Springfield Property.

86. The debt owed to Creditor by Debtor due to her misrepresentations and fraud relating to the work performed at the Harding Property and Springfield Property is a non-dischargeable debt for money obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code §523(a)(2)(A).

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the debt owed by Debtors to Creditors due to the unlawful retention of the project funds is non-dischargeable under Bankruptcy Code §523(a)(2)(a) and award and all relief this Court deems appropriate under the circumstances.

### COUNT II
### NONDISCHARGEABILITY OF DEBT
### UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

87. Creditor incorporate and re-allege by reference paragraphs 1 through 86 above as if specifically restated herein.

88. Section 523(a)(4) of the Bankruptcy Code provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

89. Debtor's acts of communicating false statements, issuing false spreadsheets, invoice and lien waiver to Creditor and unlawfully converting the $345,000 in funds designated for the Harding Property and Springfield Property were fraudulent, unlawful, and wrongful and involved the taking and carrying away of property of Creditor with the intent to convert such property for Debtor's use without the consent of Creditor.

90. Debtor is liable to Creditor for the amount incurred due to Debtor's wrongful conduct associated with the fraud and larceny of the $345,000 in funds from the rehabilitation of the Harding Property and Springfield Property.

91. The debt owed to Creditor by Debtor due to her fraud and larceny is a non-dischargeable debt within the meaning of Bankruptcy Code § 523(a)(4).

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the debt owed by Debtors to Creditors due to the unlawful retention of the project funds is non-dischargeable under Bankruptcy Code §523(a)(4) and award and all relief this Court deems appropriate under the circumstances.

**COUNT III
NONDISCHARGEABILITY OF DEBT
UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

92. Creditor incorporate and re-allege by reference paragraphs 1 through 91 above as if specifically restated herein.

93. Section 523(a)(6) of the Bankruptcy Code provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

94. Debtor's acts of fraud and larceny by communicating false statements, issuing false spreadsheets, invoice and lien waiver were willful and malicious and caused injury to Creditor.

95. Debtor's acts of fraud and larceny were wrongful, intentional, without just cause or excuse, and necessarily caused Creditor injury.

96. Debtor is liable to Creditor for Debtor's wrongful acts of fraud and larceny by communicating false statements, issuing false spreadsheets and lien waiver on the Harding Property in the amount of at least $250,000.

97. Debtor is liable to Creditor for Debtor's wrongful acts of fraud and larceny by communicating false statements and issuing a false invoice to Creditor on the Springfield Property in the amount of at least $95,000.00.

98. The debt owed to Creditor by Debtor due to wrongfully retaining $345,000 in funds is a non-dischargeable debt for willful and malicious conduct within the meaning of Bankruptcy Code §523(a)(6).

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the debt owed by Debtors to Creditors due to the unlawful retention of the project funds is non-dischargeable under Bankruptcy Code §523(a)(6) and award and all relief this Court deems appropriate under the circumstances.

## COUNT IV
## NONDISCHARGEABILITY OF DEBT
## UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE

99. Creditor incorporate and re-allege by reference paragraphs 1 through 98 above as if specifically restated herein.

100. Section 727(a)(3) of the Bankruptcy Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

101. Debtor and Glover are acting as one and were considered one and the same by Debtor and Debtor's Counsel.

102. Debtor has intentionally failed to provide and preserve all documents, records and papers from which the Debtor's financial condition or business transactions can be ascertained despite repeated requests made pursuant to the Rule 2004 Subpoena.

103. Debtor has concealed and/or destroyed documents, records and papers that would allow Creditor to ascertain Debtor's financial condition or business transactions.

104. Debtor is liable to Creditor for concealing, destroying, falsifying and failing to keep and preserve Debtor's and Glover's books, documents, records and papers, from which Debtor and Glover's financial condition and business transactions might be ascertained.

105. Based on the foregoing, Debtor is not entitled to a discharge.

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the Debtor is not entitled to a discharge under Bankruptcy Code §727 (a)(3) and award and all relief this Court deems appropriate under the circumstances.

## COUNT V

**NONDISCHARGEABILITY OF DEBT
UNDER SECTION 727(a)(4)(A), (B) and (D) OF THE BANKRUPTCY CODE**

106. Creditor incorporate and re-allege by reference paragraphs 1 through 103 above as if specifically restated herein.

107. Section 727(a)(4)(A),(B) and (D) of the Bankruptcy Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case-

(A) made a false oath or account;
(B) presented or used a false claim;
(C) ……..
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and appears, relating to the debtor's property or financial affairs;

108. Debtor has failed to file accurate schedules and statements of financial affairs.

109. Debtor knowingly filed schedules that failed to disclose her interest in Glover and failed to disclose that her "claim" against Creditor had been adjudicated in favor of Creditor.

110. Debtor has failed to produce all documents, records and papers relating to the Debtor's property or financial affairs.

111. Debtor has knowingly made false statements about what records, documents and papers she has in her possession relating to Debtor's property or financial affairs.

112. Debtor knowingly executed the bankruptcy petition without verifying the information within the petition and without disclosing true and accurate financial information.

113. Debtor has not offered any satisfactory explanation as to the documents provided after examination or documents still not provided.

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the Debtor is not entitled to a discharge under Bankruptcy

Code §727 (a)(4)(A), (B), and (D) and award and all relief this Court deems appropriate under the circumstances.

## COUNT VI
## NONDISCHARGEABILITY OF DEBT
## UNDER SECTION 727(a)(5) OF THE BANKRUPTCY CODE

114. Creditor incorporate and re-allege by reference paragraphs 1 through 108 above as if specifically restated herein.

115. Section 727(a)(5) of the Bankruptcy Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

116. This Court entered sanctions against Debtor for failure to comply with the Rule 2004 subpoena request and examination.

117. Debtor has still not provided all responsive documents or offered any satisfactory explanation as to the documents provided after examination, or documents still not provided.

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the Debtor is not entitled to a discharge under Bankruptcy Code §727 (a)(5) and award and all relief this Court deems appropriate under the circumstances.

## COUNT VII
## NONDISCHARGEABILITY OF DEBT
## UNDER SECTION 727(a)(7) OF THE BANKRUPTCY CODE

118. Creditor incorporate and re-allege by reference paragraphs 1 through 112 above as if specifically restated herein.

119. Section 727(a)(7) of the Bankruptcy Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—
(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition,

or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

120.    Debtor has committed the acts specified in paragraph (2), (3), (4), (5), or (6) of Section 727 both within one year of filing the petition, in connection with the State Court Action, and during the pendency of this case.

WHEREFORE, Creditor, Honeybadgers Holdings LLC respectfully requests that this Court enter an order determining that the Debtor is not entitled to a discharge under Bankruptcy Code §727 (a)(7) and award and all relief this Court deems appropriate under the circumstances.

Respectfully submitted,

Margaret A. Manetti (#6287000)
Sandra A. Aguilera (#6286182)         **HONEYBADGERS HOLDERS LLC**
Manetti Aguilera Seiler LLC
2213 Lakeside Drive                   By:__/s/ Sandra  A. Aguilera_____
Bannockburn, Illinois 60015                  One of its attorneys
Phone: (224) 706-6932
pleadings@maslawllc.com